### Ezra Penniman *vs.* William Cole & another.

The provision n the insolvent laws, that a debtor's conveyance of his property, in contemplation of insolvency, with intent to give a preference to any creditor, shall be void as to his other creditors, and that his assignees may recover the property so con veyed, or the value thereof, from the creditor so preferred, for the benefit of the other creditors, has not so altered the common law respecting fraudulent conveyances, as to render such conveyance void as to an attaching creditor.

The twenty four hours which, by Rev. Sts. *c.* 97, § 5, must elapse, after the entry of a judgment, before an execution can be issued thereon, are hours exclusive of the Lord's day; and if an execution be sooner issued and levied, the levy is void.

Writ of entry, dated February 5th 1844, to recover two parcels of land in Braintree. Trial before the chief justice, whose report thereof was as follows:

Both parties claimed the land under Samuel L. Holbrook, and admitted that he once owned it, and conveyed it to his father, Joseph Holbrook, by deed dated January 16th 1843. The demandant's title was derived thus: On Monday, the 1st of May 1843, in the forenoon, proceedings in insolvency were instituted against said Samuel L., in pursuance of which N. L. White was appointed assignee, and the property of the debtor was conveyed to him, by the judge of probate, in the usual form. He demanded the land in question, as land conveyed by the debtor, within six months before the insolvency, by way of preference ; whereupon, the said Joseph Holbrook, by deed of release and quitclaim, dated December 16th 1843, transferred all his title in the estate to the said White, as assignee, in the manner and upon the conditions hereinafter mentioned; and said White, as such assignee, on the same day, conveyed said land to the demandant.

The first publication of notice of the proceedings in said insolvency, under *St.* 1838, *c.* 163, was made on the 1st of May 1843, in the Mercantile Journal, printed in Boston, which is called an evening paper, and is usually issued about 2 o'clock P. M. each day.

The title of the tenants was derived as follows: They commenced an action, in February 1843, against the said Samuel L. Holbrook, on a debt existing prior to his said conveyance to his father, and, treating that conveyance as void against creditors, attached it on mesne process. They recovered judgment, at the succeeding April term of the court of common pleas, and sued out an execution on the 1st of May following; and at 7 o'clock A. M. on that day, levied it on the land in question, as the property of the said Samuel L. Holbrook.

The demandant insisted that the tenants, in order to put their claim on the ground taken by them, must prove that said conveyance to Joseph Holbrook was not only void under *St.* 1838, *c.* 163, as against the assignee, but that it was made without consideration, or was otherwise fraudulent, at common law, as against creditors. Whereupon, it was ruled, that by *St.* 1838 *c.* 163, modified and extended by *St.* 1841, *c.* 124, a deed may

42 *

be void, under those statutes, in favor of the assignee and cred itors, as a conveyance made by way of preference, although not void at common law ; and that these statutes do not so change the common law as to avoid such conveyance in favor of an attaching creditor ; and therefore, that in order to enable the tenants to hold under their said levy, they must prove that the conveyance from Samuel L. Holbrook to his father was made to delay, defeat or defraud creditors. The tenants admitted that they had no evidence to that effect, and disclaimed the right of placing their title on that ground. But they contended, that if the said conveyance was void as against the assignee and cred- itors under the insolvent laws, it was also void as against an attaching creditor; that it had, in effect, been avoided by the assignee and the release from Joseph Holbrook; and that, as they (the tenants) were first in time, they had the better title. In reference to this, the demandant admitted that the assignee denied the validity, as against him and the creditors, of the deed to Joseph Holbrook, and insisted that the deed was void, against them, under the insolvent laws, and commenced a suit against Joseph Holbrook, to recover the land; that said Joseph so far yielded to the assignee's claim, as to agree to execute a quitclaim deed to him, on condition that he should be allowed to come in and prove his claims as a creditor of Samuel L., and that the creditors would consent to the discharge of said Samuel L. ; and that, in pursuance of said agreement, the said Joseph exe- cuted a quitclaim deed, as above stated ; and that the assignee discontinued his aforesaid suit.

Supposing the tenants' title to be otherwise good, the de- mandant took exception to their said levy; namely, that their execution was issued too soon, and that the levy was com- menced before the execution could, by law, be issued, that is, within twenty four hours after the rendition of their judgment. And as to this point, it was agreed by the parties, that said judgment was rendered, in pursuance of the general order of the court of common pleas, at the end of the term ; that the court rose on Saturday, the 29th of April, in the forenoon ; and that said execution issued immediately after 12 o'clock of the fol

lowing Sunday night, being at the earliest part of Monday, May 1st. It was also agreed, that it has been the usage of the clerk of the court to issue executions without excepting Sunday in computing the twenty four hours.

A verdict was taken for the demandant, subject to the opinion of the whole court upon the questions of law in the case

*Clarke & Kingsbury*, for the tenants.

*Wilkinson & White*, for the demandant.

HUBBARD, J. By the common law, fraudulent conveyances could only be avoided by him who had a prior right or title. But by *St.* 13 Eliz. *c.* 5, conveyances made by a debtor, whereby his creditors were delayed, hindered or defrauded, were declared to be void as against creditors. And by *St.* 27 Eliz. *c.* 4, the same provision was extended so as to include and protect subsequent *bonâ fide* purchasers; and with a further provision to set aside voluntary conveyances in favor of subsequent purchasers for a valuable consideration.

These statutes have been the subject of very frequent construction both in England and in this country ; and the law is now settled, that a deed given by a debtor to his creditor, without collusion between them, in payment of a just debt, is not a conveyance voidable by the statutes against fraudulent conveyances. Prior, then, to the statute of 1838, *c.* 163, a deed made by a person in this Commonwealth, in failing circumstances, to a creditor, in payment of a just debt, though a preference was thereby given, could not be avoided by other creditors, either by the common law, or by force of the statutes of Elizabeth, as a deed made to hinder, delay or defraud creditors And in England, such conveyances were affected only by the statutes of bankruptcy.

But, by *St.* 1838, *c.* 163, § 10, a sale or transfer of any part of his estate by a debtor, in contemplation of insolvency, to a creditor, with a view of giving him a preference, is to be held void as against his other creditors, in like manner and to the same effect as deeds made to hinder, delay or defraud creditors. And the assignees may recover from the creditor such estate, so transferred to him, or the value thereof, for the use of the other

creditors.   This provision is extended by *St.* 1841, *c.* 124, § 3, to such conveyances, by way of preference, which are made within six months before the filing of the petition by or against the debtor.

The object of thus enlarging the rights of the general creditors is, to give greater efficiency to the system of insolvency thus enacted.   As it regards the debtor, it is intended to take away the motive for giving preferences; and in respect to the creditors, it is designed to give each a proportional share of the debtor's estate ; and thus, by guarding against inequality and fraud, to secure to the debtor his discharge.

It is argued, however, that when a conveyance is avoided, on account of such preference, in favor of the general creditors, an individual creditor, who may have attached the property of the debtor and levied upon it, is as well let in, to take advantage of the conveyance thus avoided, as those are who claim under the statute assignment, and that, if the levy precedes the process under the statute, his title under the levy shall be established.   But we are of opinion, that this provision is created expressly for the benefit of those creditors who come in under the commission, and prove their debts ; to secure which, the right is conferred upon the assignees to sue for and recover the property for their use.   The words of the statute avoiding conveyances made in contemplation of insolvency are, indeed, general; but they are to be construed in connexion with, and are limited by, the subject to which they relate.   The provisions of the statute are made for the benefit of those who come in under it to share the effects of the insolvent equally, and are not to be extended to him who refuses to come in under the commission, and yet would avail himself of the terms of the act to secure his whole debt.   To enable such a person to hold an estate so levied upon, he must go further, and prove that the conveyance was made with the design, not of giving a preference merely, but of delaying, hindering or defrauding creditors, and, as such, may be avoided by a creditor, without reference to the statutes respecting insolvency, and precisely as he might have done if they had never existed.

In this case, the tenants do neither prove nor aver that the conveyance to Joseph Holbrook, in January 1843, prior to their attachment, was made to delay, hinder or defraud creditors, nor that it was not for a valuable consideration. They rely merely on the fact that the conveyance was voidable by force of the statutes of insolvency under which the debtor's property has been assigned by force of a commission against him, and to which they have not become parties.

Another objection is also raised against the tenants' title, namely, that the writ of execution, by virtue of which they made the levy on the estate now demanded, was sued out within twenty four hours after the rendition of judgment. The facts appear to be, that judgment in favor of the tenants was rendered, under the general order of the court, at the end of the term, on Saturday forenoon, the 29th of April, and that the execution issued immediately after 12 o'clock on Sunday night; so that, if Sunday is excluded in the computation of the twenty four hours, the execution was delivered too soon, and the levy cannot be supported.

This is a point of practical importance, which does not appear to have received a judicial decision. The question to be settled is, how the time is to be computed; and in doing this, it will be necessary to consider the object of the framers of the law, in prohibiting the issuing of executions until twenty four hours have expired after the rendition of judgment.

This case, as to the computation of time, falls within the reasoning of the .court in *Thayer* v. *Felt,* 4 Pick. 354, which case depended on the construction to be given to a clause in the statute authorizing the sale on execution of equities of redemption; which clause permits the officer to adjourn the sale, not exceeding three days. The sheriff, in that case, adjourned the sale four days, and the case turned upon the regularity of the adjournment. One of the three days was Sunday, and the question was, whether it ought to be reckoned as one of the enumerated days referred to in the statute. The case there principally relied upon, as supporting the objection to the regularity of the sale, was *Alderman* v. *Phelps,* 15 Mass. 225, in

which it was held that the thirty days after judgment, during which the property attached is subject to the judgment creditor's lien, includes the Sundays in the enumeration, although the last day should fall on Sunday, and consequently, that a levy on the Monday following would not save the lien created by the attachment. But the court, in giving their opinion in *Thayer* v. *Felt*, say, it does not follow that the same construction is to be given to a statute wherein the time limited is less than a week, and which, therefore, may or may not include Sunday; that if Sunday was included in the adjournment, then as to sales adjourned in the latter part of the week, only two days would in fact be allowed, as the sale could not lawfully take place on Sunday; that it would be very clear, if the adjournment should be from day to day, it would be good when made from Saturday to Monday; and that the statute must receive a reasonable construction, and that its design was to give three business days of the week, in order to make due preparation for the adjourned sale.

As to the case at bar, the language of the Rev. Sts. c. 97, § 5, is very precise. "No execution shall be issued within twenty four hours after the entry of the judgment." The words are not, *within a day*, and thus giving room for a question what space of time was to be included in the word *day;* but they are, specifically, twenty four hours; and the same language has been used in our statutes for the past one hundred and fifty years. The object of the provision we take to be this; to give a judgment debtor opportunity to examine into the correctness of the judgment, the accuracy of the calculation, where a computation is to be made, and to ascertain if the costs are properly taxed. To perform all or either of these things satisfactorily, and with the aid of his attorney, a juridical or lay day is necessary, in which the clerk may be resorted to, or an appeal made to the court, if in session, or to a judge at chambers. The time is given for the benefit of the judgment debtor; and the statute is to receive such a construction as will make the hours available to him as lawful business time, in which he can attend at the proper place and see the proper persons, to enable him to ascertain

that the judgment is correct, before execution goes forth against him. The reasons, which influenced the court in *Thayer* v *Felt*, apply in all their force here.

The laws for the proper observance of the Lord's day have ever been enforced in this Commonwealth, for the purpose of promoting the happiness of the community; and among other provisions are these; that no civil process shall be served or executed on that day; that no person shall do any manner of labor, business or work, except only works of necessity and charity, nor travel, except from necessity or charity. Rev. Sts. *c.* 50. It is very clear, therefore, from these provisions, that no clerk is in the acceptable discharge of his duty, who is engaged in filling writs of execution on the Lord's day. And it is equally clear, that he cannot be compelled to do it, from any supposed necessity. And yet, if the creditor is entitled, as matter of right, to his execution, in twenty four hours after judgment rendered, and the hours of Sunday are not excluded in the calculation, he may be compelled to be employed during those hours, when the court has adjourned on Saturday. It follows from this, therefore, as well as for the other reasons stated, that no creditor has a right to demand from the clerk the performance of this service on the Lord's day. It is strictly *dies non juridicus*, and the clerk is not required to be in his office. The law does not call for the observance of incompatible duties. It does not say that one of its officers shall labor in his office on the Lord's day, and at the same time pronounce such labor a violation of the law. The Lord's day is a day set apart from other days, and is to be kept, not in form merely, but in spirit; and the due and faithful observance of it is essential to the welfare of our favored Commonwealth. Feeling this to be true, we are not called upon to lessen the force of the statute for its observance, by any loose construction of any provisions of other statutes which bear upon it.

Upon both the points raised in this case, we are of opinion that the title of the tenants cannot be sustained, and that the demandant is entitled to

*Judgment on the verdict.*